Francis S. Kilmer MacMILLAN,
Appellant,

v.

Robert E. MOFFETT, Appellee.

Patent Appeal No. 8351.

United States Court of Customs
and Patent Appeals.

Nov. 12, 1970.

---

Richard C. Witte, Jack D. Schaeffer, Cincinnati, Ohio, attorneys of record, for appellant; Watson, Cole, Grindle & Watson, Washington, D. C., of counsel.

Joseph K. Andonian, Kalamazoo, Mich., for appellee; Eugene O. Retter, Kalamazoo, Mich., of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and McMANUS, Chief Judge, Northern District of Iowa, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority to the junior party, Moffett, whose application serial No. 384,246 was

filed July 21, 1964.[1] MacMillan's application serial No. 104,262 was filed April 20, 1961.[2] We affirm the board's decision.

The invention as defined by the single count is

A method for controlling perspiration which comprises topically applying to human skin a composition comprising, as the principal active ingredient, a small but perceptible amount less than about 0.1% of a compound selected from the group consisting of (1) scopolamine esters of the formula

[A3014]

wherein R is alkyl having 1 through 12 carbon atoms, and (2) physiologically acceptable acid addition salts thereof, dispersed in a topical carrier.

The facts, all of which are stipulated, relate principally to the use of scopolamine pivalate hydrochloride, a compound within the formula recited in the count, as an active ingredient in an antiperspirant composition. The Upjohn Company, Moffett's employer, designated this compound as U-5008, and we shall do likewise.

In early 1957, Upjohn representatives sent several anticholinergic compounds, including U-5008, to its consultant, Dr. Kligman, for antiperspirant testing. Dr. Kligman tested these compounds in 5% aqueous solutions and reported poor results. A number of individuals experienced no effect whatever from application of these compositions to the skin. Upjohn personnel, however, concluded that the testing conditions may have been too stringent to reflect actual usage conditions.

In 1958 The Upjohn Company supplied Procter and Gamble, MacMillan's employer, with samples of methscopolamine bromide (Pamine), its o-acetyl derivative, and fourteen other compounds for evaluation as topical antiperspirants. None of these compounds fall within the count. Procter and Gamble reported that Pamine and its o-acetyl derivative were the best topical antiperspirants of the compounds submitted, and that Pamine was effective in a 0.1% concentration.

In 1959 Procter and Gamble representatives met with Upjohn representatives, including Dr. Moffett, and proposed (1) developing Pamine as an acceptable topical antiperspirant, and (2) screening other compounds having anticholinergic activity, with a view to finding ones possessing increased potency or reduced side effects as compared to Pamine. Dr. Moffett, a recognized expert on anticholinergic compounds, then selected 69 compounds for this program from over 500 compounds which either possessed known anticholinergic properties or were of theoretical interest as possible anticholinergics. This list was pared down to 60 compounds, including U-5008, by the head of Upjohn's Biological Screening Office, based on availability of sufficient quantities and policy considerations unassociated with the biological properties of the compounds involved. Samples of the 60 compounds were sent to Procter and Gamble "for the purpose of topical antiperspirant screening." From the record before us, no express guidance appears to have been given concerning concentration.

Upon receipt the samples were turned over to Dr. MacMillan, a recognized expert on topical antiperspirant testing, under whose direction tests, "standard for Procter and Gamble evaluation," were carried out. These tests revealed that

1. A continuation-in-part of applications serial No. 39,781, filed June 30, 1960, and serial No. 62,563, filed October 14, 1960. Moffett was accorded the benefit of the June 30 date.

2. A continuation-in-part of application serial No. 31,804, filed May 26, 1960. MacMillan was accorded the benefit of the May 26 date.

19 of the compounds submitted were wholly inactive as topical antiperspirants, 24 showed only slight activity, 11 were fairly active, 4 were moderately active, and 2 were highly active under the conditions of the tests. U-5008 was found to be outstandingly effective as a topical antiperspirant, being effective at a concentration as low as 0.01%.

On the foregoing facts the board concluded that Moffett was the sole inventor of the invention defined by the count and that MacMillan derived the invention from him. The board based this finding on two subsidiary findings: (1) That Moffett had a complete conception of the claimed subject matter, and (2) that such complete conception was communicated to MacMillan. While we need express no opinion here as to whether these subsidiary findings are *sine qua non* for derivation, it is undisputed that *if* the subsidiary findings are correct, derivation must be concluded. It must be noted that the board's premises have narrowed the issues from inventorship to conception and communication.

█ MacMillan contends that Moffett merely "pulled from his shelves" 69 anticholinergic compounds, having no knowledge that U-5008 would have new and unexpected properties over the prior art and over the other 68 compounds he selected. From this MacMillan argues that Moffett's conception was incomplete because Moffett did not "appreciate" the conception of using U-5008 in a method of controlling perspiration. We do not think that the conceiver must know the unexpected properties associated with the conceived invention (see, e.g., Weis v. Woodman, 65 F.2d 274, 20 CCPA 1211 (1933)), nor even that the conceived subject matter is new. These facts are of course relevant to patentability, but there is no requirement in the law that a conceiver be aware of the facts which render the conceived subject matter *patentable*. The "appreciation" requirement is no more than a recognition requirement applied in cases wherein the invention is produced unintentionally.

See Rivise and Caesar, Interference Law and Practice § 117 (1940), and cases cited therein.

█ As to the contention that Moffett merely pulled U-5008 from the shelf along with many other compounds, we fail to see the relevance of that fact, even if true, to the completeness of Moffett's conception. Moffett did not merely think generally. He thought specifically about 69 different compounds and reported them specifically. He chose them individually, knowing that a *method of making* each was available, and thinking of a *use* for each in a method of controlling perspiration. His reasons or lack of reasons for including U-5008 are not relevant to the question of conception. The important thing is that he did think in definite terms of the method claimed.

Similarly, there is no significance to the fact that the conception of the claimed invention occurred nearly simultaneously with the conceptions of many other methods, each using a different active ingredient, or that many of those other methods turned out to be inoperative or otherwise unpatentable. Had Moffett selected and reported the compounds one at a time, no one would have difficulty in seeing the separate nature of the conceptions. The result should be no different where they are selected nearly simultaneously and reported together.

MacMillan also contends that Moffett's conception was incomplete in that Moffett did not have in mind the use of U-5008 in a concentration less than 0.1% as recited in the count. The board found to the contrary, pointing out that Pamine was known by Moffett to be effective at 0.1% concentration and that his task, according to the stipulated facts concerning the meeting previously mentioned, was to select other compounds for antiperspirant testing, "looking for increased potency or reduced side effects" as compared to Pamine. The board concluded that it was "implicit in the relation between the parties that any compound found to be effective be tested for such effectiveness even at the minimum

concentrations of the preceding program." With this reasoning we agree. From the stipulated facts as to Dr. Moffett's task, it is reasonable to conclude that, in selecting a given compound, he thought of using it in concentrations less than 0.1%, since this would be the simplest way of ascertaining whether the selected compound exhibited "increased potency."

■ MacMillan further urges that Moffett's conception should be deemed incomplete under the doctrine of "simultaneous conception and reduction to practice," as set forth in Robinson, The Law of Patents for Useful Inventions § 381 (1890). According to that "doctrine," in some unpredictable areas of chemistry and biology, there is no conception until the invention has been reduced to practice. The "reason" given by Robinson for this is that until reduction to practice occurs in such cases the inventor does not *know* that the invention will work. It is MacMillan's position that this court, in Smith v. Bousquet, 111 F.2d 157, 27 CCPA 1136 (1940), applied such a doctrine of simultaneous conception and reduction to practice. Whether or not the holding in Smith v. Bousquet was based on such a doctrine, this court's decision in Applegate v. Scherer, 332 F.2d 571, 51 CCPA 1416 (1964), made it abundantly clear that such a doctrine does not apply in cases where the issue is originality or derivation. This is such a case.

■ Having concluded that the board did not err in finding that Moffett had a complete conception of the invention defined by the count, it remains to be considered whether such complete conception was communicated to MacMillan. The board stated that MacMillan "was merely conducting standard tests in accordance with a prior understanding in relation to a compound proposed by Moffett." Such statement implies communication of the complete conception to MacMillan, and we cannot say that the board's finding is against the weight of the evidence. It would be reasonable to conclude that MacMillan was aware of his own company's successful prior use of a 0.1% concentration with Pamine, and that MacMillan would have understood that he was expected to test U-5008 at or below that concentration.

Appellant MacMillan has mentioned several times the significance of his discovery that U-5008 is an effective antiperspirant at a concentration of 0.01%, one-tenth the concentration recited in the count. Whether that discovery could be the basis of a separately patentable, subservient invention, and, if so, who would be the proper inventor thereof, are questions not before us.

The decision of the board is affirmed.

Affirmed.