**Application of Wolfgang KRANK and Gunther Mohring.**

**Patent Appeal No. 8447.**

United States Court of Customs and Patent Appeals.

March 11, 1971.

Jay M. Cantor, Washington, D.C., attorney of record, for appellants.

S. William Cochran, Washington, D.C., for the Commissioner of Patents. R. V. Lupo, Washington, D.C., of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of all claims in appellants' application serial No. 363,166, filed April 28, 1964, for "Elliptical Waveguide for Electromagnetic Waves." We affirm.

The specification states that it was old in the art to use smooth-walled waveguides of elliptical cross-section, the elliptical shape contributing good (wideband) electrical transmission characteristics as compared with tubes of circular cross-section. It was also old to use waveguides having corrugated or bellows-like surface configurations, since this feature lent mechanical flexibility to the waveguides. The specification goes on to say:

> Experience gained with corrugated tubes and bellows-type tubes as cable sheaths, lead [sic; led?] to the expectation that a corrugated tube or bellows-type tube of elliptical cross-section would meet the mechanical requirements of a waveguide, at least under certain conditions. However, it could not be expected that the electrical relations would be as simple as for smooth walled elliptical tubes. It was rather to be expected that the depth of the corrugations as well as their pitch would have considerable influence on the electrical behavior which could not be predicted by calculations. It was, therefore, necessary to rely on empirical results which were difficult to ascertain because of the multiplicity of parameters involved.

Appellants, apparently through experiments, found that if the ratio of the eccentricity $e_s$ of the ellipses formed by the corrugation depressions to the eccentricity $e_1$ of the ellipses formed by the corrugation ridges is held in the range of 1.025 to 1.075, preferably at 1.050, good flexibility and good transmission characteristics are obtained. If the ratio $e_s/e_1$ is less than 1.025, indicating for normal sizes and thicknesses that the corrugations are not very deep, little flexibility is obtained. If the ratio exceeds 1.075, excellent flexibility is obtained, but a "detour factor" due to the deep corrugations results in a significant increase in damping or attenuation of the transmitted waves.

Appellants also found that if the corrugations are formed by a continuous helical depression in the waveguide surface, as opposed to the bellows-like configuration, the helical pitch should not be greater than one-eighth the operating wavelength, in order to prevent the occurrence of "reflection peaks." None of these specification assertions has been challenged by the Patent Office.

Claim 1 reads:

> A low-loss corrugated waveguide which is coilable on a drum comprising a hollow tube having corrugation crests and corrugation troughs; said waveguide having an elliptical cross-section wherein the elliptical area varies along the longitudinal axis of said hollow tube from a large ellipse at a cross-section including a corrugation crest to a small ellipse at a cross-section including a corrugation trough; said large ellipse having a major axis of length $D_1$, a minor axis of length $d_1$, and an eccentricity $e_1$ equal to $\sqrt{1-(d_1/D_1)^2}$ ; said small ellipse having a major axis of length $D_s$, a minor axis of length $d_s$, and an eccentricity $e_s$ equal to $\sqrt{1-(d_s/D_s)^2}$ ; and the ratio $e_s/e_1$ being greater than 1.025 and less than 1.075, whereby to provide minimal electrical damping factor and maximum flexibility for winding said waveguide on a drum.

Claim 2 adds the limitation that the corrugations are helical; claim 3 adds the further limitation that the ratio of ec-

centricities is 1.05. Claim 4 depends from claim 2 and adds the limitation that the helical pitch is no greater than ⅛ the operating wavelength. Claim 5 depends from claim 1 and specifies bellows-like corrugations; claim 6 depends from claim 5 and further specifies that the ratio of eccentricities is 1.05.

All claims stand rejected as obvious over a patent to Schuttloffel and Krank[1] (Krank being one of the appellants here) in view of Ragan[2] and Lines.[3]

Schuttloffel discloses a helically corrugated waveguide as illustrated in Figs. 1 and 2 of the patent.

FIG. I.

[A3711]

FIG .2.

---

1. U. S. Patent 3,200,356, issued August 10, 1965, on an application filed July 2, 1962.

2. *Microwave Transmission Circuits*, Radiation Laboratory Series, Vol. 9, pp. 282–83 (1948).

3. British Patent Specification 739,488, published November 2, 1955.

Schuttloffel states that the waveguide has "an elliptical cross section" which may be made by "pressing or flattening a corrugated hollow line with a round cross section."

Ragan discloses a bellows-type corrugated rectangular waveguide having rounded corners, as shown in his Fig. 5.-45.

Fig. 5-45.—Seamless corrugated waveguide.

[A3712]

In both Schuttloffel and Ragan a principal object is to provide waveguides having mechanical flexibility without significant impairment of electrical transmission properties.

Lines need not be discussed in any detail. It is relied upon primarily to show that to obtain both flexibility and good transmission characteristics in a corrugated waveguide has long been a design objective, a fact not in dispute here.

The Patent Office position is that Schuttloffel clearly teaches corrugated elliptical waveguides and that Ragan teaches the criteria to be used in choosing the dimensions for such waveguides.

▮ Appellants' first contention is that Schuttloffel is not available against them as a reference under section 102(e). This contention is based on the fact that appellant Krank is a coinventor on the Schuttloffel patent. Appellants are aware that under our decision in In re Land and Rogers, 368 F.2d 866, 54 CCPA 806 (1966), the entity Schuttloffel and Krank must be considered "an-

other" as to the entity Krank and Mohring, as that term is used in section 102(e). They contend, however, that the instant case should, in fairness, be distinguished from *Land* on the ground that here appellants are German citizens, did all their work in Germany, and hence are prevented by section 104 and Rule 131 from antedating the Schuttloffel patent. We cannot accept appellants' contention. They have apparently chosen to disregard our statement in *Land* that antedating is not the *only* way of removing a reference, i. e., of showing that an event mentioned in section 102 has not in fact occurred. *Id.* 368 F. 2d at 878, 54 CCPA at 823. For example, while Schuttloffel and Krank are "another" as to Krank and Mohring, if it were shown that the information relied upon in the Schuttloffel patent had actually been contributed by Krank and Mohring, the Schuttloffel patent would not be the *kind* of "patent granted on an application for patent by another" contemplated by Congress in the enactment of section 102(e). See In re Facius, 408 F.2d 1396, 56 CCPA 1348 (1969); Janicke, "The Many Meanings of 'Invention' in Patent Practice: Different Meanings in Different Situations," Patent Law Perspectives, Appendix 1, pp. 9–11 (Nov.1970). No such showing has been made here. We conclude that the board was correct in holding that Schuttloffel was available as a reference against appellants.

▮ Appellants further contend that even if Schuttloffel is available as a reference against them, the examiner and board were incorrect in concluding obviousness based on Schuttloffel taken with Ragan and Lines. Appellants urge, correctly in our view, that Schuttloffel does not disclose a waveguide the cross-section of which is a true ellipse, and that the claims on appeal are limited to truly elliptical tubes. We agree that flattening a circular tube, as taught by Schuttloffel, is unlikely to produce a truly elliptical tube. Nevertheless, the suggestion to make tubes having as cross-sections true ellipses could not be clearer

from Schuttloffel. The word "elliptical" appears throughout the patent, even in the title.

A much closer question is raised by appellants' contention that, even if the prior art suggests making truly elliptical corrugated waveguides, it would not have been obvious that the eccentricity ratio range recited in the claims would be a significant design criterion. While we may agree, arguendo, that the outer limits of the eccentricity ratio would not have been apparent from the prior art of record, we are led, by a careful study of Ragan with Schuttloffel, to the conclusion that the claims read on some obvious embodiments and hence are unpatentable under section 103. The examiner took the rectangular dimensions given in Ragan and assumed an ellipse, suggested by Schuttloffel, of roughly the same area as the rectangle and having an axis ratio of 0.5, which, the examiner said, was "the same ratio as narrow wall to wide wall ratio of rectangular waveguides." Using these figures the examiner computed the eccentricity ratio as 1.055, almost exactly what appellants regard as an optimum value, and lying near the middle of the range recited in claim 1. Appellants have not challenged the accuracy of the examiner's computation. We further note that Ragan's rectangular waveguide with rounded corners is somewhat similar to an ellipse, and if the heights and widths disclosed by Ragan for two commercially available waveguides were used as ellipse axes, the eccentricity ratio for one model would be about 1.068 and for the other about 1.056, both within the range recited in the claims. Accordingly, we must conclude, in the absence of contrary evidence, that one skilled in the art would be led by the Schuttloffel and Ragan references to construct elliptical corrugated waveguides having eccentricity ratios within the range cited in appellants' claims.

Appellants have not urged patentable significance in the limitation in claim 4 that the helical corrugation pitch does not exceed one-eighth the operating wavelength of the signals to be transferred by the waveguide.

We find no error in the board's decision, and it is affirmed.

Affirmed.