Peter **HEDGEWICK**, Appellant,

v.

Edward G. **AKERS**, Appellee.

Patent Appeal No. 9199.

United States Court of Customs and Patent Appeals.

June 13, 1974.

3. See United States v. Volkswagen of America, C.A.D. 1113, 490 F.2d 977, 61 CCPA —— (1974).

Owen E. Perry, Atty. of record, Reising, Ethington & Perry, Southfield, Mich., for appellant.

Giles C. Clegg, Jr., Thomas L. Cantrell, Joseph M. Revesz, attys. of record, Clegg & Cantrell, Dallas, Tex., for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority to appellee (Akers), the senior party, who is involved through application serial No. 710,032, filed March 4, 1968. Appellant (Hedgewick), the junior party, is involved through application serial No. 715,391, filed March 22, 1968. We affirm.

The interference concerns a safety package comprising a container and a cap which is disengageable therefrom by combined axial and rotative motion. Inasmuch as derivation·is the only dispositive issue raised on appeal, further discussion of the invention is unnecessary except to note that it involves a relatively narrow difference from appellant's prior art Palm-N-Turn cap, the subject of his patent No. 3,344,942, issued October 3, 1967.

Hedgewick was president of International Tools Ltd. (ITL) of Windsor, Ontario, Canada, which is a subsidiary of ITL Industries. Reflex Corporation of Canada Ltd. (Reflex) is another subsidiary which was established for the production of the Palm-N-Turn cap. Reflex is assignee of the Palm-N-Turn patent and also of Hedgewick's present application.

Alternative constructions to the Palm-N-Turn cap were discussed and sketched among Hedgewick, McBride (an engineer for Reflex), and Morillo (manager of Reflex). The sketches,

some of which satisfy the limitations of the two counts in interference, were kept in McBride's personal files in a cabinet in the engineering area at Reflex. Although employees of the engineering area had access to them, the files were dormant after January 1, 1967.

Because of Akers' experience with plastic closures and safety caps, he was hired by Hedgewick as a consultant for Reflex to design tooling for the Palm-N-Turn cap and to review production procedures, quality control, and other problems encountered in the Palm-N-Turn cap program. Akers was present on the premises of ITL and Reflex at various times from January to August, 1967, and had access to McBride's "dormant" files. McBride, Morillo, and another employee were instructed not to withhold any information from Akers, but, on the other hand, no instruction was given to directly reveal anything to him. Morillo testified that he showed sketches to Akers of alternative cap constructions to the Palm-N-Turn cap, some of which satisfy the limitations of count 1. However, he could not produce any of the sketches and could not recall anyone else who saw them.

Akers testified that he did not recall seeing or discussing the contents of any of the documents introduced by Hedgewick prior to the interference; [1] that he paid no attention to sketches, such as those allegedly shown him by Morillo, because they were not drawn to scale and did not show the locking action of the container and cap; and that he did not recall seeing any of the sketches allegedly shown him by Morillo, although he conceded that anything was possible.

Akers testified that subsequent to his employment at Reflex he conceived his invention, as evidenced by various corroborated engineering drawings. Akers' cap, as conceived and constructively reduced to practice, differs in form and design from the cap covered by Hedge-wick's application, although the functioning of the essential elements is the same.

## OPINION

As noted above, the only dispositive issue is derivation. In considering this issue, we point out that evidence of activity, knowledge or use concerning an invention in a foreign country is not precluded by 35 U.S.C. § 104 in establishing derivation. That section merely provides:

> In proceedings in the Patent Office and in the courts, an applicant for a patent, or a patentee, may not establish a *date of invention* by reference to knowledge or use thereof, or other activity with respect thereto, in a foreign country, except as provided in section 119 of this title. [Emphasis supplied.]

Evidence of derivation has to do with origin of the invention—not date of invention. See In re Krank, 438 F.2d 609, 58 CCPA 976 (1971). As stated in Federico, Commentary on the New Patent Act, 35 U.S.C.A., page 24:

> It should be noted that proof of acts abroad is not barred when the object is not to establish a date of invention, that is when the object is not to antedate a printed publication or public use or the date of invention of another; in a case where an applicant for patent, in an interference, is trying to show that the adverse party was not an inventor at all but derived the invention from him, the fact that the events took place in a foreign country would be immaterial.

The legislative history of 35 U.S.C. § 104 confirms this analysis. The predecessor statute (35 U.S.C. 109, 1946 ed., § 9 of the Boykin Act, P.L. 690, 60 Stat. 940 (1946)) was enacted to eliminate the anomalous situation resulting from Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 59 S.Ct. 675, 83 L.Ed. 1071 (1939).[2] As a result of the deci-

---

1. The documents were various sketches of safety caps from the Palm-N-Turn program, such as those from McBride's files.

2. S.Rep.No.1502, 79th Cong. 2d Sess. 8–9 (1946) and H.R.Rep.No.1498, 79th Cong. 2d Sess. 7–8 (1946). See also Federico, Com-

sion in that case, evidence of activity abroad was admissible for the purpose of proving a patentee's date of invention in a patent infringement case in which the alleged infringer sought to defend on the ground of public knowledge or use prior to the patentee's date of invention; whereas as the Supreme Court pointed out, in an interference proceeding, such evidence was not admissible.

Thus, the testimony presented on behalf of Hedgewick relating to acts, knowledge, or use of the invention in Canada was admissible for the purpose of the derivation issue. Although Hedgewick himself did not testify, his testimony would have been relevant and admissible for this purpose.[3]

The issue of derivation is one of fact, and the party asserting derivation has the burden of proof. Beall v. Ormsby, 154 F.2d 663, 33 CCPA 959 (1946). That burden is independent of the senior or junior party status of the parties. Fritz v. Hawn, 37 F.2d 430, 17 CCPA 796 (1930). Derivation is shown by a prior, complete conception of the claimed subject matter and communication of the complete conception to the party charged with derivation. Egnot v. Looker, 387 F.2d 680, 55 CCPA 782 (1967); MacMillan v. Moffett, 432 F.2d 1237, 58 CCPA 792 (1970).[4] Communication of a complete conception must be sufficient to enable one of ordinary skill in the art to construct and successfully operate the invention. Agawam Co. v. Jordan, 74 U.S. (7 Wall.) 583, 19 L.Ed. 177 (1869); DeGroff v. Roth, supra.

All the circumstances in the record must be considered in evaluating the sufficiency of the communication. Bartsch v. Baker, 134 F.2d 487, 30 CCPA 919 (1942).

It should be emphasized that mere proof of motive and opportunity (e. g. access) is not sufficient to carry the burden of proving derivation. Rider v. Griffith, 154 F.2d 193, 33 CCPA 884 (1946). Under the proper circumstances, differences between the embodiments of the parties may demonstrate that their inventions were independently made. St. Pierre v. Harvey, 233 F.2d 337, 43 CCPA 918 (1956).

The board held that Hedgewick failed to satisfy his burden of proving that sufficient information was communicated to Akers to constitute a complete conception, bearing in mind the narrow difference between the invention and the prior art Palm-N-Turn cap. For this purpose, it assumed, without deciding, that Hedgewick possessed the necessary complete conception prior to the alleged disclosure to Akers.[5]

That Akers had access to the files in the engineering area is, without more, insufficient to establish derivation. Any inference of derivation that could possibly arise from such access is dispelled by the differences in form and design between the embodiments of the parties. Morillo's alleged communication of sketches of the invention to Akers is uncorroborated and was, for all practical purposes, denied by Akers.

mentary on the New Patent Act, supra; Ex parte Lemieux, 115 USPQ 149 (PO BdApp 1957).

3. It does not appear that the board drew any adverse inference from Hedgewick's failure to testify. However, in certain cases an adverse inference would be permissible. Revise and Caesar, Interference Law and Practice, Vol. IV, § 649 and 657 (1948). See Kravig v. Henderson, 362 F.2d 1015, 53 CCPA 1534 (1966); DeGroff v. Roth, 412 F.2d 1401, 56 CCPA 1331 (1969). Nor does it appear that any adverse inference was drawn by the board because of the deletion of Canadian conception dates from appel-

lant's exhibits attached to his preliminary statement.

4. However, showing a prior, complete conception and communication thereof is not the only way to establish derivation. MacMillan v. Moffett, supra, and Alexander v. Williams, 342 F.2d 466, 52 CCPA 1155 (1965).

5. We believe the board should have decided whether Hedgewick possessed the necessary conception with a view to avoiding the results of a piecemeal decision in event of reversal. See Wakefield v. Watkins, 491 F.2d 1268, (CCPA 1974), particularly the concurring opinion.

In view of the foregoing, we conclude that the board correctly held that Hedgewick failed to meet his burden of proof on the derivation issue.

Hedgewick raises an additional issue that Akers is not entitled to count 1 because it includes subject matter which he does not regard as his invention. 35 U.S.C. § 112 (2d par.). Whether this issue is ancillary to priority need not be decided at this time inasmuch as nothing in the testimony of Akers demonstrates that his claims include subject matter which he does not regard as his invention.[6]

The decision of the board is affirmed.

Affirmed.

LANE, Judge, concurs in result.

---

6. A count is a vehicle for contesting an interference and may not necessarily be awarded as a claim to a winning party or be proper under 35 U.S.C. § 112 (e. g. a phantom count). Whether a section 112 (2d par.) issue is ancillary to priority would depend on how it is characterized: patentability, third party inventorship, derivation, ad-

mission against interest, or disclaimer. On the latter point, see Kademann v. Bollmann, 421 F.2d 1372, 57 CCPA 907 (1970). Characterization can be complicated by statements of an inventor who is not versed in the scope of claims or the various meanings of "invention."