58 CCPA

**Bruce J. WATKINS and Glenn D. Johnson, Appellant,**

**v.**

**Charles E. WAKEFIELD, Jr., Appellee.**

**Patent Appeal No. 8488.**

United States Court of Customs and Patent Appeals.

July 1, 1971.

■

---

Alan L. Potter, Plumley & Tyner, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

The sole issue in this appeal is whether the Patent Office Board of Interferences was correct in holding that the junior party, appellants Watkins and Johnson, had failed to demonstrate "reasonable diligence" in reducing the subject matter of the involved counts to practice. 35 USC 102(g).

The five counts of this interference were copied by appellant[1] from Wakefield's patent.[2] They define apparatus used for supporting equipment at the top of an underwater oil well, particularly a well drilled offshore in the floor of the ocean from a floating drilling vessel. More specifically, and as stated by appellee, "the invention here in issue is an apparatus designed to support a conductor pipe vertically in an underwater well bore even though the underwater earth surface is not level." As further explained in appellants' brief:

> The "conductor" pipe is cemented in the upper portion of the well during the initial drilling stages. It provides:
>
> 1. A firm foundation through which the well is drilled deeper.
>
> 2. Support for subsequent strings of pipe or casing which must be added as the well is deepened.
>
> 3. Support for specially designed drilling equipment attached to the upper end of the conductor pipe above the ocean floor.

Count 1 is illustrative:

> 1. Landing base apparatus for use with a conductor pipe in off-shore drilling operations conducted in an un-

C. Russell Hale, Christie, Parker & Hale, Pasadena, Cal., attorney of record, for appellant.

Roderick William MacDonald, Richardson, attorney of record, for appellee.

---

1. The involved application is Serial No. 194,367, filed May 14, 1962, and assigned to Shell Oil Company.

2. U. S. Patent 3,143,172, issued August 4, 1964, on an application filed October 16, 1961, and assigned to Richfield Oil Corporation (now Atlantic-Richfield).

derwater formation from a floating vessel, comprising in combination: a base member adapted to land on said formation, said base member including means for supporting said conductor in said formation and means associated with said conductor pipe so arranged and proportioned that said conductor pipe is universally movable relative to said base member whereby said conductor pipe maintains substantially vertical alignment irrespective of the slope of said formation on which said base member is landed.

The board held that each of the counts requires the presence of the conductor pipe for use in the combination. Appellee has stated in his brief that the apparatus of the counts consists essentially of the conductor pipe, the support base and the gimbaled, or "universal" joint. Aside from alleging broadly that the board committed error in its award of priority, appellants do not appear to dispute this characterization of the invention. Accordingly our opinion is based on the premise that completion of the invention of the counts required assembly of the three essential elements mentioned above.

Appellee Wakefield has conceded that appellants conceived the invention by April 4, 1961, and that such conception was prior to the earliest date to which he is entitled. Also, the record establishes that at some time prior to July 1961, appellants' assignee elected to utilize the invention in a commercial well, designated "Naples State 101", which it had scheduled to be drilled in January 1962. As a result of this decision, a contract was let with a private firm for construction and assembly of all the equipment necessary to complete this well, including the apparatus of the counts.

The board found that activity directed toward fabrication of this equipment commenced in early July, 1961. By October 4, 1961, the contractor had assembled a support base and a gimbaled joint and had manipulated these elements. However, this assembly was not attached to a conductor pipe at that time, nor was provision made for attachment of the joint to a conductor pipe. The record is clear that the contractor thereafter went on to complete work on the remainder of the well equipment without further work on the device of the counts. In the meantime, appellants' assignee continued coordinating and making plans final for the drilling of the well. Assembly of all three essential components of the counts took place when drilling of the commercial well was initiated on January 12, 1962.

The board first held that appellants were not entitled to October 4, 1961, as a reduction to practice because the structure assembled on that date "did not support the limitations of the counts," and because the conditions under which that assembly was tested "did not simulate any use of the structure for its intended purpose." It thereupon went on to conclude, on the basis of the facts as we have summarized them, that

(5) Watkins et al. has not proven reasonable continuous diligence during the period October 4, 1961 to January 12, 1962 in reducing to practice the invention of the counts and has not proven adequate excuse for the failure to exercise such diligence during that period.

The board thus having limited its holding to the question of diligence during the above-specified portion of the critical period, we shall confine our review to the propriety of only that holding.

## OPINION

Our consideration of the record as a whole, including the findings and conclusions made by the board, in light of the arguments made by the parties, has convinced us that on the narrow issue as we have stated it the board committed reversible error. In reaching that conclusion, we have not lost sight of the fact that the period in question spans more than three months (apparently a rather long time if nothing more than the relative simplicity of the involved de-

vice is considered), nor have we ignored appellants' burden in this proceeding as those who have copied claims from a patent. It is also true, of course, as argued by appellee, that the three-component assembly *could* have been tested earlier on a simulated wellhead. On the other hand, the involved device was conceived and designed to be used in a rather unique environment as an element of a large and complex installation. That circumstance, in our opinion, constitutes ample justification for foregoing such a test in favor of the far more meaningful procedure of testing the assembly under actual operating conditions.

We are satisfied from the record that the Shell Company, appellants' assignee, was diligent throughout the aforementioned period in carrying out the plans for drilling the Naples State 101 well. We are further left with no reason to doubt that the contractor was similarly diligent during that time in completing the equipment to be provided for that operation. This continuous diligence directed to the execution of the operation in which the involved invention was to be tested, when considered with the other circumstances in this case, provides adequate excuse for the delay in question and therefore compels the conclusion that appellants were reasonably diligent in reducing their invention to practice. Compare Keizer v. Bradley, 270 F.2d 396, 47 CCPA 709 (1959); Radio Corp. of America v. Philco Corp., 201 F.Supp. 135 (E.D.Pa.1961).

Hudson v. Giuffrida, 328 F.2d 918, 51 CCPA 1048 (1964), relied on by appellee in support of the board's holding, we find distinguishable. That case, unlike this one, involved a situation where the inventor or his representatives deliberately refrained from making an adequately meaningful test readily within their immediate abilities solely on the ground of convenience.

The decision of the board is reversed.

Reversed.