Charles E. WAKEFIELD, Appellant,

v.

Bruce J. WATKINS and Glenn D. Johnson, Appellees.

Patent Appeal No. 9109.

United States Court of Customs and Patent Appeals.

March 7, 1974.

Roderick W. MacDonald, Dallas, Tex., attorney of record, for appellant.

Hayden A. Carney, Pasadena, Cal., attorney of record, for appellees.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This is a sequel to our decision in Watkins v. Wakefield, 443 F.2d 1207, 58 C.C.P.A. 1363 (1971), and is an appeal from the decision of the Board of Patent Interferences of March 2, 1972, adhered to on reconsideration, following our reversal of a decision of that board in the former appeal.

The sole question here, as in the former appeal, is the diligence of the party Watkins et al. (Watkins) during the "critical period" extending from just prior to June 5, 1961, when Wakefield is conceded to have conceived the invention, to an actual reduction to practice by Watkins in January, 1962. In making its first decision, the board restricted its consideration to what, for convenience, we will call the second half of the critical period, and found lack of diligence from October 4, 1961, to actual reduction to practice on January 12, 1962. In an opinion on a request for reconsideration of its first opinion, the board was very explicit in restricting its consideration to that second half of the period, saying:

> With respect to the question of diligence, since we found that Watkins et al. were not diligent and had not proven adequate excuse for the failure to exercise diligence during that portion of the critical period from October 4, 1961 to January 12, 1962 (Conclusion 5) which alone is fatal to their case, *it is not necessary to discuss, and we decline to discuss, any matters relating to diligence during any other period* of time beginning immediately prior to June 5, 1961. [Emphasis ours.]

After we reversed the board's limited holding of lack of diligence and lack of excuse during the second half of the critical period, proceedings before the board were reopened with respect to the first half of the period, resulting in the board

decision here on appeal which was that, following the logic of our prior opinion, Watkins' assignee, Shell Oil Company, was diligent from prior to June 5 to October 4, 1961, i. e., during the first half of the critical period. Since, in legal effect, this was a holding that Watkins was diligent throughout the entire critical period, priority was awarded to him. We affirm.

We described the invention of the counts in our prior opinion and will not do so again except to point out that it is an integral part of an underwater well-drilling system which we characterized as large and complex. To emphasize that point, we note the facts that the indexing pad or landing base supports a conductor pipe which is 156 feet high, having a lower section 90 feet long and 16 inches in diameter and an upper section of 66 feet which is 24 inches in diameter and 1 inch thick. The lower 140 feet of pipe has to go into a drilled well bore with the landing base resting on the ground, its ball-shaped supporting connection with the pipe being some 4 feet in diameter. The top 16 feet of the conductor pipe extend above ground level and this section is surrounded by a stiffener pipe 36 inches in diameter, the space between being filled with cement to form a strong wellhead to which drilling and completion equipment may be attached. Testing the invention of the counts under actual operating conditions requires the drilling, at least part way, of an underwater well.

The gist of our prior decision was that Watkins was legally diligent in reducing the invention to practice so long as the assignee, Shell, was diligently pursuing the development and completion of the entire system of which the invention was an integral part. We said that continuous diligence with respect to the entire operation "provides adequate excuse" for delays in reducing to practice the invention of the counts per se. Excusing lack of activity with respect to the invention itself is tantamount to a legal finding of diligence in reducing the invention to practice. We held there was ample justification for not trying to test the invention under conditions simulating actual use "in favor of the far more meaningful procedure of testing the assembly under actual operating conditions."

Under these circumstances, the effect of our prior decision was to settle the question of diligence from October 4, 1961, to January 12, 1962. The board, in its first opinion, started with October 4 because that was the date when construction of the invention had proceeded to the point of assembling the index plate and ball joint in the plant of the construction contractor, final assembly thereof to the conductor pipe not taking place until the parts were aboard the well-drilling vessel, after which reduction to practice occurred. We now have to settle the question of diligence from just prior to June 5, 1961, Wakefield's conception date, to October 4, 1961.

The record shows that Shell's assignors the inventors Watkins and Johnson, were key engineers in Shell's newly-formed Marine Division and that they conceived the invention of the counts in the course of developing the entire underwater system in which it came to be used. The actual reduction to practice in January, 1962, took place in drilling an underwater well known as "Naples State 101," offshore in California's Santa Barbara Channel. Wakefield's argument is that the board erred in following the reasoning of our prior opinion to find diligence during the period June 5—October 4, 1961, his principal ground for alleging error being that Watkins has failed to sustain the burden of proving that Shell made its election to drill the Naples State 101 well at any time before July 11, 1961. On this basis he alleges a first period of lack of diligence from June 5 to July 11. He sees a distinction between the first and second halves of the critical period in that what occurred in the latter was all subsequent to the election to drill that well. Wakefield sees a second period of no

diligence between July 11 to August 8 when an effort was made to locate a ball by the contractor, and a third one-week gap until the next such effort was made. This summarizes his case for lack of diligence.

We think it is unimportant when Shell elected or decided to drill the Naples State 101 well. We agree with Watkins that it is immaterial whether the system being developed by Shell was to be used in that well or some other well. The proofs are that Shell's Marine Division was diligently designing and building equipment for a system of underwater drilling from long prior to June 5, 1961— at least from April 17, 1961—and that a decision had been made to use the equipment embodying the invention of the counts in the system long before it was decided what would be the first well in which it would be tried out. Wakefield's Reply Brief asks us not to draw from the record the "erroneous inference" that Watkins, Johnson, and Shatto, the Mechanical Engineer of their division and a principal witness, "had any intention of drilling a well" prior to July 11, 1961. We see nothing erroneous in inferring that the designing of an underwater well-drilling system was for the sole purpose of drilling a well somewhere and it seems unimportant to us, from the standpoint of determining diligence in that enterprise, at what point in time a drilling site for the well was selected.

April 17, 1961, is the date of working drawings of the invention which were in sufficient detail to enable a contractor to build the equipment. Shatto testified that Shell elected to use the invention shortly before those drawings were made. The invention was part of the equipment that was actually used as soon as design and building of the equipment was finished, which confirms the existence of the intent. Since we find that Shell's diligence in developing the system was continuous from a time prior to June 5, 1961, to the beginning of the second half of the critical period, we find that Watkins was justified in not working on the invention per se, or was excused from so doing, during that period, to any greater extent than he did. Since we have now held him diligent during all of the critical period, he was entitled to a holding that he was entitled to the award of priority.

The decision of the board is affirmed.

Affirmed.

MILLER, Judge (concurring).

I fully agree with the majority opinion, but I believe it should be pointed out that the issue of diligence during the entire "critical" period could have been settled —all at once and a long time ago. The board in the original case declined to discuss, much less decide, any matters relating to diligence during any period other than October 4, 1961, to January 12, 1962. Thus, our review in the original case was limited to that period, and our decision of July 1, 1971, triggered further proceedings in the Patent Office leading to this appeal to close the gap left by the board's first decision. Loss of valuable time and expense to the parties, the Patent Office, and the court has been the result, and the patent to Watkins has been delayed for over three years. The practice of avoiding piecemeal decisions whenever possible is to be strongly encouraged.