Miguel A. Hernández Agosto, Presidente del Senado de Puerto Rico, por sí y a nombre y en representación de dicho cuerpo, peticionario, *v.* Carlos Romero Barceló, Gobernador del Estado Libre Asociado de Puerto Rico, demandado.

*Número:* JO-81-18 *Resuelto:* 31 de marzo de 1982

*Marcos A. Ramírez*, abogado de los peticionarios; *Francisco Ponsa Feliú*, abogado del demandado.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

Atendemos en jurisdicción original el recurso de *mandamus* instado por el Hon. Miguel A. Hernández Agosto, quien comparece por sí y a nombre y en representación del Senado, solicitando se obligue al Gobernador a enviar a dicho cuerpo para su consejo y consentimiento la nomina-

ción de los funcionarios de gobierno, en particular los miembros del Gabinete, que el Gobernador ha decidido retener en sus cargos por un segundo término en la gobernación.

■ No se cuestiona el ejercicio de nuestra jurisdicción original. En efecto, el recurso cumple sustancialmente con los requisitos formulados por la jurisprudencia para el ejercicio de esa jurisdicción por este Tribunal. La cuestión es, sin duda, de gran interés público, va dirigida contra el Gobernador y requiere pronta solución. *Dávila* v. *Superintendente de Elecciones*, 82 D.P.R. 264 (1960); *Partido Popular* v. *Gallardo*, 56 D.P.R. 706 (1940). Además, el peticionario hizo el requerimiento previo al Gobernador mediante la Resolución del Senado Núm. 217, aprobada el 29 de abril de 1981.[1]

Es de rigor considerar en primer término las defensas planteadas por el Gobernador en su oposición al recurso para luego resolver sus méritos.

I

A. *Defecto de partes*

Sostiene el demandado que conforme a las disposiciones de la Regla 16 de Procedimiento Civil y en orden a una adjudicación equitativa de la controversia es indispensable traer al pleito a los funcionarios que el Gobernador decidió retener en sus cargos. A su juicio, la omisión de incluirlos como partes indispensables y de notificarles de la solicitud viola el debido proceso de ley. No estamos de acuerdo.

[1] Dicha resolución dispone en lo pertinente:

"TERCERO: En caso de que el Gobernador no contestare este requerimiento según las circunstancias expresadas en el párrafo segundo anterior, o en caso de que contestare negándose a someter los nombramientos referidos para su confirmación por el Senado, el Senado autoriza a su Presidente, Lcdo. Miguel A. Hernández Agosto, para que a nombre y en representación del Senado de Puerto Rico, radique en el Tribunal General de Justicia el procedimiento adecuado para que el Poder Judicial determine finalmente la controversia sobre interpretación constitucional que existe entre el Poder Ejecutivo y el Senado de Puerto Rico sobre la cuestión planteada en esta Resolución."

 El auto de *mandamus* va dirigido a la persona obligada al cumplimiento de un acto y su único propósito es compeler ese cumplimiento. Art. 650 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3422; [2] *Honoré* v. *Wilson*, 32 D.P.R. 827 (1924). En el caso de autos es el Gobernador quien alegadamente tiene que cumplir con el deber de enviar las nominaciones de los funcionarios concernidos al Senado, por lo que es él la única parte indispensable en este recurso. Los funcionarios en cuestión no tienen obligación alguna con respecto al cumplimiento de ese deber objeto del litigio.

 Tampoco las Reglas de Procedimiento Civil requieren la acumulación como partes indispensables de dichos funcionarios. Como se sabe, dichas reglas son aplicables al auto de *mandamus* por disposición expresa de la Regla 14(b) del Reglamento de este Tribunal, ". . . únicamente en cuanto las mismas no conflijan con este Reglamento, se adapten a la eficiente tramitación de la causa, y cumplan los fines de la justicia". I *Práctica Forense*, Ap. I-A R 14, pág. 674. *Rivera* v. *Cancel*, 68 D.P.R. 365 (1948); *Martínez* v. *Vda. de Morales*, 72 D.P.R. 210 (1951). La Regla 16, que corresponde a la Núm. 19 de las Reglas federales de Procedimiento Civil, tan solo requiere la presencia en el pleito de aquellas "personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia . . .". [3] Reglas de Procedimiento Civil, pág. 44. Este precepto procesal tiene como propósitos proteger a las personas ausentes de los efectos perjudiciales

---

[2] El Art. 650 del Código de Enjuiciamiento Civil provee en lo pertinente:

"El auto de *mandamus* . . . se dirigirá a cualquier . . . persona obligada al cumplimiento de un acto que la ley particularmente ordene como un deber resultante de un empleo, cargo o función pública . . .".

[3] La Regla 16.1 provee:

"Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada."

que pudiera tener la resolución del caso sin la presencia de ellos y evitar la multiplicidad de pleitos mediante un remedio efectivo y completo. Wright & Miller: VII *Federal Practice & Procedure,* sec. 1604 (1972). Ambos propósitos se cumplen cabalmente en este caso sin la presencia de los funcionarios en cuestión.

Como ya vimos, la razón de pedir en este caso el envío de las nominaciones de los funcionarios concernidos al Senado nada requiere de éstos, y más aún, nada puede requerirles porque ellos no tienen incumbencia en el asunto. Por tal razón, la controversia puede dilucidarse en ausencia de dichos funcionarios sin riesgo de que tal omisión pueda dar motivo a multiplicidad de pleitos o frustrar la concesión de un remedio efectivo y completo.

Con respecto a la notificación, la Regla 14(g) del Reglamento de este Tribunal sólo requiere que se notifique el recurso a las partes afectadas y ellos no son partes.

B. *Capacidad jurídica*

El Presidente del Senado ha comparecido en este pleito por sí a nombre y en representación del Senado, conforme le autorizó la Resolución Núm. 217 de dicho cuerpo. Véase escolio 1, *supra.* El demandado impugna tanto su capacidad jurídica como la de dicho cuerpo para instar la demanda fundándose en que el Presidente del Senado no tiene interés personal en la causa de acción ni alega haber sufrido daño; que la función del consejo y consentimiento corresponde al Senado y no a sus miembros individuales, y que el Senado no tiene personalidad jurídica para comparecer a los tribunales.

■ La función primordial de la defensa de falta de capacidad jurídica es asegurar al tribunal que el promovente de la acción es uno cuyo interés es de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia. *Flast* v. *Cohen,* 392

414

U.S. 83, 99–100 (1965), *Baker* v. *Carr*, 369 U.S. 186, 204 (1962). Numerosos casos de este Tribunal y de la jurisdicción federal discuten con amplitud las complejidades técnicas de la doctrina de capacidad jurídica y su aplicación en diversas circunstancias. *Fund. Arqueológica* v. *Depto. de la Vivienda*, 109 D.P.R. 387 (1980); *P.S.P.* v. *E.L.A.*, 107 D.P.R. 590 (1978); *Zachry International* v. *Tribunal Superior*, 104 D.P.R. 267 (1975); *Salas Soler* v. *Srio. de Agricultura*, 102 D.P.R. 716 (1974); *Cerame-Vivas* v. *Srio. de Salud*, 99 D.P.R. 45 (1970); *Asociación de Maestros* v. *Pérez, Gobernador Int.*, 67 D.P.R. 849 (1947); *Gladstone, Realtors* v. *Village of Bellwood*, 441 U.S. 91 (1979); *Duke Power* v. *Carolina Env. Study Group*, 438 U.S. 59 (1978); *Village of Arlington Heights* v. *Metropolitan Housing Corp.*, 429 U.S. 252 (1977); *Simon* v. *Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976); *Warth* v. *Seldin*, 422 U.S. 490 (1975); *Sierra Club* v. *Morton*, 405 U.S. 727 (1972); *Association of Data Processing Service* v. *Camp*, 397 U.S. 150 (1970); *Flast* v. *Cohen*, supra; *Baker* v. *Carr*, supra. Nos remitiremos, pues, a exponer los requisitos esenciales de la doctrina que son pertinentes al caso ante nos.

■ Es indispensable que el promovente de la causa de acción alegue haber sufrido un claro y palpable daño. *Fund. Arqueológica* v. *Depto. de la Vivienda*, supra. El daño debe ser real, inmediato y preciso; no puede ser abstracto o hipotético. *Warth* v. *Seldin*, supra; *Gladstone, Realtors* v. *Village of Bellwood*, supra. La causa de acción debe surgir bajo el palio de la constitución o de una ley. *Fund. Arqueológica* v. *Depto. de la Vivienda*, supra; *Salas Soler* v. *Srio. de Agricultura*, supra; y debe establecerse una conexión entre el daño y la causa de acción ejercitada. *Village of Arlington Heights* v. *Metropolitan Housing Corp.*, supra; véase, además, *Should Congress Defend its Own Interest Before the Court*, 33 Stan. L. Rev. 715 (1981).

En la jurisdicción federal se admite sin discusión la capacidad jurídica de los cuerpos legislativos para comparecer por sí o autorizar a uno de sus miembros o un comité del cuerpo para representarlo en los tribunales. *United States* v. *American Tel. and Tel. Co.*, 551 F.2d 384, 391 (1976); *Congressional Access To The Federal Court*, 90 Harv. L. Rev. 1632 (1977). En *American Tel. and Tel. Co.* expresó el tribunal al respecto:

> Es claro que la Cámara de Representantes como tal tiene capacidad jurídica para hacer valer su poder investigativo y puede designar a uno de sus miembros para que la represente.

■ La controversia planteada en el litigio se refiere a la función del Senado de impartir su consejo y consentimiento a la nominación de los funcionarios concernidos. Se trata, pues, de una facultad reconocida específicamente por el Art. IV, Sec. 5 de la Constitución en la que el Senado tiene interés legítimo en ventilar y vindicar en este Tribunal. La relación de este interés con la causa de acción ejercitada es de por sí evidente. Eso es todo lo que requiere la doctrina de capacidad jurídica para instar la presente causa de acción.

■ Como miembro del Senado, el Hon. Miguel A. Hernández Agosto tiene también un legítimo interés en participar en el ejercicio de la función constitucional de ese cuerpo de consejo y consentimiento. La omisión del alegado deber del Gobernador de enviar la nominación al Senado ciertamente le impediría intervenir en el proceso de confirmación y menoscabaría sus funciones constitucionales como senador.

En *Kennedy* v. *Simpson*, 511 F.2d 430 (1974), se reconoció la capacidad jurídica de un miembro del Senado para proteger la efectividad de su voto en una ley a la cual el Presidente de los Estados Unidos le había impartido un veto de bolsillo. La Corte de Apelaciones para el Circuito del Distrito de Columbia expresó lo siguiente:

Es axiomático para este Tribunal que en tanto la función del Congreso sea disminuida en igual proporción se reduce la función individual de cada uno de sus miembros. Dicho de otra manera, la influencia de cualquier legislador en el proceso político depende en gran medida de la estatura de la rama gubernamental de la cual es miembro. Pág. 436.

En *Mitchell* v. *Laird*, 438 F.2d 611 (1973), doce congresistas instaron *injunction* contra el Presidente y otros miembros del gabinete alegando que éstos habían comprometido a los Estados Unidos en la guerra de Indochina sin haber obtenido una declaración de guerra del Congreso, lo cual violaba el derecho constitucional de ellos como miembros de ese cuerpo a decidir si los Estados Unidos debían intervenir en esa guerra. El Tribunal les reconoció capacidad jurídica para instar la demanda.

En *Williams* v. *Phillips*, 360 F.Supp. 1363 (1973), también se les reconoció capacidad jurídica a cuatro senadores de los Estados Unidos que instaron acción para destituir al Director Interino de la Oficina de Oportunidad Económica, porque no había sido confirmado por el Senado. El tribunal consideró que el hecho de que dicho funcionario estuviera desempeñando el cargo interinamente, y no como Director en propiedad de la agencia, no afectaba la capacidad jurídica de los promoventes, porque como Director Interino el funcionario estaba desempeñando las funciones de Director en propiedad sin que tuviera la confirmación del Senado y sin que la ley autorizara un nombramiento interino.

En resumen, los legisladores en su condición de miembros de la Asamblea Legislativa tienen capacidad jurídica para vindicar sus prerrogativas y funciones constitucionales tales como, en este caso, la participación de los miembros del Senado en el proceso de confirmación alegadamente menoscabada por el Gobernador.

C. *Incuria*

Considera el demandado que el peticionario ha incu-

rrido en una demora injustificada por haber transcurrido más de siete meses desde que se aprobó la Resolución del Senado Núm. 217, que autorizó al Presidente de dicho cuerpo a presentar el recurso, hasta que se instó la solicitud de *mandamus* en este Tribunal.

■ La defensa de incuria no opera como un simple término prescriptivo en que el mero transcurso del tiempo es suficiente para impedir el ejercicio de la causa de acción. Su aplicación requiere, además del transcurso del tiempo, que se haya ocasionado un perjuicio al demandado o que se le haya puesto en desventaja por razón del tiempo transcurrido. *Pueblo* v. *Tribunal Superior*, 81 D.P.R. 904 (1960); *Alonso* v. *Tribl. Examinador de Médicos*, 74 D.P.R. 158 (1952); *Jiménez* v. *Junta de Retiro*, 61 D.P.R. 171 (1942). No puede soslayarse en la consideración de esta defensa la naturaleza del derecho que se reclama, que en el caso de autos se refiere al alegado incumplimiento de un acto de rango constitucional.

El demandado alega como perjuicio que someter a los funcionarios concernidos a un nuevo proceso de confirmación "cabe la posibilidad de que estos funcionarios no sean confirmados, lo cual resultaría en tener que iniciar nuevamente todo el proceso, con los consiguientes obstáculos, vacantes en los cargos, interinatos y problemas resultantes del descargo de las funciones del ejecutivo". El argumento va dirigido más bien a los méritos de la controversia y no a los efectos de la demora, pues el alegado perjuicio subsistiría aun cuando la demanda se hubiera presentado tan pronto se tuvo conocimiento de la negativa del demandado al requerimiento de la parte peticionaria.

■ Ciertamente el demandado no ha demostrado que se le haya causado un perjuicio o desventaja con motivo de la alegada dilación en la presentación de la solicitud de *mandamus*. Ello sería de por sí suficiente para rechazar la defensa de incuria, si no lo fuera también el evidente interés público que reviste el recurso.

D. *Procedencia del mandamus*

Hemos resuelto que el auto de *mandamus* es el recurso apropiado para compeler al cumplimiento de un deber que se alega impuesto por la ley —en este caso la Constitución del Estado Libre Asociado— cuando no se dispone de otro remedio legal adecuado. *Dávila* v. *Superintendente de Elecciones*, supra. Por supuesto, el deber cuyo cumplimiento se requiere mediante el auto debe estar dentro de las atribuciones o deberes que la ley le impone al funcionario concernido. Art. 649, Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3421. La jurisprudencia establece, además, el requisito de que el derecho del promovente y el deber del demandado deben surgir en forma clara y patente. *Balasquide* v. *Luján*, 45 D.P.R. 563, 576 (1933); *Santiago* v. *Tilén*, 71 D.P.R. 754 (1950); *Espina* v. *Calderón*, *Juez, y Sucn. Espina, Int.*, 75 D.P.R. 76 (1953). De ahí que el demandado argumente con alguna vehemencia que el deber tiene que ser expreso, con lo cual no podemos estar de acuerdo porque reduciría la función exclusiva de este Tribunal de interpretar la Constitución y las leyes. Si el deber surge o no claramente de las disposiciones aplicables es cuestión sujeta a interpretación judicial que no depende de un juicio a priori fundado exclusivamente en la letra del estatuto. Tal determinación ha de surgir del examen y análisis de todos los elementos útiles a la función interpretativa; del "examen paciente y riguroso que parte de la letra de la ley y evalúa todos los elementos de juicio disponibles para así descubrir el verdadero significado y propósito de la disposición legal". *Banco de Ponce* v. *Srio. Hacienda*, 81 D.P.R. 442, 450 (1959). Al respecto advierte el Profesor Jaffe:

> Anteriormente mencionamos que una alternativa a la regla de "discreción-ministerial" era la regla del "deber claro de actuar". Esta regla también puede ser criticada, pero si se entiende y aplica con propiedad, se acerca a una expresión correcta y válida. Si significa que no se expedirá

> el mandamus hasta que el tribunal resuelva que hay un deber legal de actuar, es, por supuesto, una propuesta perfectamente obvia a la cual nada se le añade al describirse el deber como "claro". Puede, no obstante, tomarse como que significa que si la norma de derecho aplicable es controvertible (en la opinión del juez), entonces el tribunal no hará una determinación independiente de la ley en la cual basar el auto contra el funcionario . . . . Jaffe, L., *Control of Administrative Action*, Little Brown & Co., 1965, pág. 183.

En conclusión, el argumento del demandado de que el deber tiene que surgir expresamente de la disposición aplicable para que proceda el auto de *mandamus* es inaceptable.

Es preciso, por tanto, considerar de inmediato el recurso en su fondo.

## II

■ Debe quedar claro desde el comienzo que no existe disposición alguna en la Constitución ni en las leyes del Estado Libre Asociado de Puerto Rico que expresamente imponga al Gobernador el deber de enviar al Senado, para consejo y consentimiento, la nominación de los secretarios de gobierno nombrados en el cuatrienio anterior y que el Gobernador desea retener en el nuevo cuatrienio. El promovente sostiene, sin embargo, que tal deber se deriva implícitamente de las disposiciones constitucionales aplicables y del esquema de nuestro sistema constitucional, lo que de ser correcto ciertamente tendría el efecto de limitar la duración del cargo de los secretarios de gobierno al término de incumbencia del Gobernador que los nombra. Examinemos su planteamiento.

El poder de nombramiento bajo la Constitución dimana del Art. IV, Sec. 4, que provee:

> Nombrar, en la forma que se disponga por esta Constitución o por ley, a todos los funcionarios para cuyo nombramiento esté facultado. El Gobernador podrá hacer nombramientos cuando la Asamblea Legislativa no esté en sesión.

Todo nombramiento que requiera el consejo y consentimiento del Senado o de ambas cámaras quedará sin efecto al levantarse la siguiente sesión ordinaria.

Es, además, pertinente a la cuestión la ·Sec. 5 del Art. IV:

Para el ejercicio del Poder Ejecutivo el Gobernador estará asistido de Secretarios de Gobierno que nombrará con el consejo y consentimiento del Senado. El nombramiento del Secretario de Estado requerirá, además, el consejo y consentimiento de la Cámara de Representantes, y la persona nombrada deberá reunir los requisitos establecidos en la sección 3 de este Artículo. Los Secretarios de Gobierno constituirán colectivamente un consejo consultivo del Gobernador que se denominará Consejo de Secretarios.

## A. *Antecedentes históricos*

Las cartas orgánicas de 1900 y 1917, leyes Foraker y Jones, fijaban expresamente a los miembros del gabinete un término de incumbencia de 4 años, Ley Foraker, Sec. 18; Ley Jones, Sec. 13, 39 Stat. 955; especificándose en la segunda que el cargo se ocuparía por dicho término y hasta que su sucesor fuera designado y tomara posesión del mismo. [4] La Ley del. Gobernador Electivo de 1947 también limitó el término de incumbencia de los jefes de departamentos, pero en vez de fijarle un término específico dispuso que cada uno de ellos ocuparía el cargo "mientras permanezca en su puesto el Gobernador por quien fue nombrado y hasta que su sucesor tome posesión, a menos que fuere antes destituido por el Gobernador". Ley Pública Núm. 362 del 5 de agosto de 1947, 61 Stat. 771, Carta Orgánica de 1917, Sec. 13. Esta era la disposición estatutaria vigente al momento de discutirse y aprobarse la Constitución.

---

[4] Conviene advertir que bajo la Ley Foraker el Consejo Ejecutivo del Gobernador era nombrado por el Presidente de los Estados Unidos, mientras que bajo la Ley Jones una parte del gabinete era nombrado por el Presidente y otra por el Gobernador con el consejo y consentimiento del Senado.

La Convención Constituyente se apartó de estos modelos estatutarios que fijaban un término específico a la incumbencia de los miembros del gabinete. Es de vital importancia conocer el historial de la Convención sobre el asunto, porque ilumina esplendorosamente la intención y propósito de no limitar en forma alguna el término de incumbencia de los jefes de departamentos. El texto original propuesto por la Comisión de la Rama Legislativa preservaba el modelo de la Ley Jones limitando el término de los secretarios de gobierno al término de incumbencia del Gobernador que los nombró, a saber:

> La Asamblea Legislativa tendrá facultad para crear, consolidar o reorganizar departamentos ejecutivos y definir sus funciones; y para determinar las facultades, deberes y el término de servicios de los secretarios de gobierno. *Ningún secretario de gobierno desempeñará su cargo por un término que exceda el de la incumbencia del Gobernador que· le nombró.* (Énfasis suplido.) 3 *Diario de Sesiones de la Convención Constituyente* 1934–1935 (1952).

Este texto no prevaleció pues, a propuesta del Delegado Gutiérrez Franqui, Presidente de la Comisión de Estilo, se eliminó del mismo el poder de la Asamblea Legislativa para determinar por ley las facultades y deberes de los secretarios de gobierno y todo lo relativo al término de incumbencia. El texto finalmente aprobado dispuso:

> La Asamblea Legislativa, por ley, tendrá facultad para crear, consolidar o reorganizar departamentos ejecutivos y definir sus funciones. 3 *Diario de Sesiones de la Convención Constituyente* 2268 (1952). [5]

El Delegado Gutiérrez Franqui explicó extensamente el cambio propuesto:

> En otras palabras: Que meramente consignamos la facultad del Gobernador para nombrar los secretarios de gobierno. Dejamos establecido también en otra parte de esta

---

[5] Este es el texto vigente de la Sec. 16 del Art. III de la Constitución.

constitución, que los secretarios de gobierno asistirán al Gobernador en el desempeño y en el ejercicio del poder ejecutivo. Y que, en cuanto a los departamentos de gobierno, meramente consignemos la facultad de la Asamblea Legislativa para crear, consolidar, reorganizar y determinar las funciones de los departamentos. Y que, nada digamos en cuanto al poder para determinar las funciones y el término de duración de los cargos de los secretarios propiamente dichos, adoptando así la doctrina de la Constitución de los Estados Unidos que acabo de exponer ante ustedes. 3 *Diario de Sesiones de la Convención Constituyente* 2270 (1952). (⁶)

---

(⁶) Reproducimos a continuación la magnífica explicación del delegado Gutiérrez Franqui, porque recoge en ella la experiencia acumulada bajo la Constitución de Estados Unidos sobre el asunto:

"SR. GUTIÉRREZ FRANQUI:

"Al examinar cuidadosamente esta disposición, nos asaltó la duda de si era facultad propia de la Asamblea Legislativa, en un gobierno de sistema republicano, y en donde la Asamblea Legislativa tiene la facultad de aprobar leyes por encima del veto del Gobernador, que el poder legislativo pudiera tener la facultad, de variar a su antojo, el término de duración de los cargos de los secretarios de gobierno; o de variar a su antojo, la especificación de sus funciones.

"En nuestro estudio del problema, fuimos a buscar la fuente del derecho constitucional americano, y en primer término nos encontramos con que la Constitución de los Estados Unidos nada dice sobre las funciones y el término de duración de los cargos de los miembros del Gabinete. Al encontrarnos con esa situación en la Constitución federal, empezamos a buscar la historia judicial de interpretación que pudiera haber sobre el particular, y encontramos que el problema fue uno objeto de amplia consideración y discusión por los federalistas y por los primeros comentaristas de la Constitución americana. Y desde luego, al principio de la discusión del problema, surgieron dos tendencias: La que sostenía que el Congreso de los Estados Unidos podía, en cualquier momento, determinar la duración del cargo de los miembros del Gabinete y variarla a su antojo; y los que sostenían que el poder legislativo no podía intervenir con esa situación, por ser de la exclusiva incumbencia del poder ejecutivo.

"La situación llegó hasta su culminación cuando el Congreso aprobó el Tenure of Office Act, en el cual abiertamente pasó a fijarle término de duración a los cargos de todos los funcionarios ejecutivos.

"El Congreso aprobó el Tenure of Office Act, que como dije hace un momento, le fijaba término a los cargos de todos los funcionarios ejecutivos, incluyendo a los miembros del Gabinete.

"El Presidente Johnson, en violación de la disposición de este estatuto, destituyó a su Secretario de Guerra, y la Cámara de Representantes le formuló acusación para residenciarlo por ese motivo. Pero el Senado de los Estados Unidos no quiso actuar.

"Posteriormente, y antes de que el Tenure of Office Act pudiera ser sometido

El historial antes reseñado revela concluyentemente que la Convención Constituyente rehusó expresamente fijar término de incumbencia a los secretarios del gobierno y concretó su clara intención en el texto vigente de la Sec.

a otra clase de prueba, a petición del Presidente Cleveland, el Congreso de los Estados Unidos lo derogó.

"La primera controversia judicial que surge en torno al problema, surge cuando un presidente de los Estados Unidos destituye a un administrador de correos. Este lleva su caso a las cortes, y es finalmente resuelto por el Tribunal Supremo de los Estados, por resolución de su juez presidente entonces, señor Taft; y [este es el caso] que se conoce en la jurisprudencia sobre este particular, como el caso Myers. El caso Myers sostuvo que la Constitución de los Estados Unidos, al concederle al Presidente la facultad de nombramiento, le concedió como ingrediente indispensable de esa facultad, la facultad de destitución en cualquier momento; y que ninguna disposición del Congreso de los Estados Unidos podía fijarle término a un funcionario del [poder] ejecutivo que fuese válido, contra la facultad absoluta del [jefe] ejecutivo de removerlo en cualquier momento.

"La decisión al caso de Myers, que fue bastante criticada por los comentaristas, subsistió, sin embargo, hasta el año 1935 en que se produce la segunda decisión judicial sobre el problema; cuando el Presidente Franklin D. Roosevelt destituyó por carta al Presidente de la Federal Trade Commission. El cargo de presidente del Federal Trade Commission, había sido creado mediante estatuto, y se le había fijado un término de 7 años. Al poco tiempo de estar el Presidente Roosevelt en Casa Blanca, tuvo una controversia con Mr. Humphreys, que era el Presidente del Federal Trade Commission. Como resultado de esa controversia, el Presidente Roosevelt le escribió una carta diciéndole que era evidente que sus ideas y política pública en materia de comercio no coincidían, y que toda vez que él era el jefe del [poder] ejecutivo le suplicaba le enviase su renuncia. El Presidente de la Comisión, se negó a enviar la renuncia, y al día siguinete el Presidente Roosevelt le escribió una carta separándolo del cargo.

"Así fue que la situación llegó a la corte, y es en esa fecha en que se modifica la regla absoluta, en el caso de Myers, y se decide que la Constitución de los Estados Unidos, al guardar silencio sobre el término de duración de los cargos de los miembros del Gabinete, y al no autorizar específicamente al Congreso para legislar sobre la materia, había procedido sobre la base, de que siendo esos cargos de naturaleza tal que pertenecían a la rama ejecutiva, en su propia esencia, el poder del Presidente de nombrar y destituir en esos cargos era absoluto; y que en eso se confirmaba la doctrina del caso de Myers.

"Pero señaló el caso de Humphreys que la regla no es así cuando se trata de nombramientos que el Presidente hace, pero que, en primer lugar, no son de la esencia misma del poder ejecutivo, o son nombramientos que hace para personas que desempeñan funciones en una de las otras dos ramas del gobierno. Bien sea en la rama legislativa, en la rama judicial, o en los organismos de carácter cuasi judicial. O sea, que la facultad del Presidente de los Estados Unidos para nombrar una persona en la rama legislativa, que le fuera señalada por ley, tiene que regirse con todas las limitaciones que la ley le impone. Y si le impone un

424

16, Art. III y las Secs. 4 y 5 del Art. IV de la Constitución, las cuales aparecen en el texto de la opinión.

 La interpretación contemporánea de estatutos por la Rama Ejecutiva tiene siempre importancia en el ejercicio de la función judicial y es por eso que debemos considerarla. *Quevedo Segarra* v. *J.A.C.L.*, 102 D.P.R. 87 (1974); *Commonwealth Ins. Co.* v. *Casellas*, 103 D.P.R. 539 (1975).

A raíz de aprobada la Constitución, el entonces Gobernador, Hon. Luis Muñoz Marín, quien había sido Presidente de la Comisión de Preámbulo y quien participó intensamente en los trabajos de la Convención Constituyente, 1 *Diario de Sesiones* 119, 2789 (1951), retuvo en sus cargos a varios secretarios de gobierno en el nuevo cuatrienio de su gobernación sin someter la nominación de ellos al Senado para su consejo y consentimiento. Consistentemente el Gobernador Muñoz Marín mantuvo esta práctica en los cuatrienios de 1953, 1957 y 1961. El Hon. Roberto Sánchez Vilella, quien ocupó el cargo de Secretario de la Convención Constituyente, 1 *Diario de Sesiones* 1 (1951), reafirmó esta práctica al asumir la gobernación en el cuatrienio de 1967. El único nombramiento que siempre se sometió a la confirmación del Senado fue el de Secretario de Estado, por ser éste quien, por disposición

---

término de tiempo, ese término de tiempo es superior al poder del [jefe] ejecutivo al hacer la designación.

"Si la ley le concede al Presidente de los Estados Unidos la facultad de hacer un nombramiento de carácter judicial, o para una junta u organismo de carácter cuasi judicial, y le fija un término, entonces el término es obligatorio para el Presidente, y no puede disponer del cargo sin sujeción a lo que la ley disponga en cuanto al término. Que donde es claro, que el Congreso no puede intervenir para fijarle términos de duración a los cargos, es en relación con aquellos, que por ser de naturaleza esencialmente de la rama judicial[*] [*sic*] la constitución no les dispuso término, y, por consecuencia, el poder de remover estaba implícito en la facultad de nombrar." 3 *Diario de Sesiones de la Convención Constituyente* 2268–2270 (1952).

(*) En el Diario de Sesiones aparece una nota aclaratoria al efecto de que la referencia a la rama judicial "probablemente debe leer ejecutiva". Véase nota al calce, pág. 2270. Es evidente que así es.

constitucional, sustituye al Gobernador en caso de vacantes absolutas o transitorias. Art. IV, Secs. 7 y 8. Es decir, durante cuatro términos de gobernación la práctica inalterada de dos gobernadores que participaron en los trabajos de la Convención Constituyente fue la de no someter al Senado las nominaciones de los funcionarios de gobierno que ellos decidieron retener en sus respectivos cargos en el nuevo cuatrienio. Esa práctica es de singular importancia para la interpretación de las disposiciones constitucionales aquí en cuestión.

No debemos pasar por alto que también el entonces Secretario de Justicia, en su Opinión Núm. 25 del 18 de octubre de 1967, dio su conformidad a dicha práctica expresando al respecto:

> Es conveniente señalar el hecho de que, de producirse algún cambio en la Gobernación, no resulta necesario que el nuevo Gobernador nomine nuevamente y tramite un nuevo nombramiento a aquellos Secretarios de Gobierno, el Secretario de Estado inclusive, que interese retener a su servicio, por cuanto sus términos de incumbencia, después de su nombramiento original, continúan sin interrupción de clase alguna a la absoluta discreción del poder nominador, con independencia de que cambie la persona que le representa. Es importante puntualizar que la Convención Constituyente derrotó y rechazó una proposición al efecto de que el término de los Secretarios expirase simultáneamente con el del Gobernador que les nombró. (Cita omitida.) Págs. 103–104, n. 6.

No empece la lucidez del historial y de los textos reseñados el peticionario los repudia y argumenta tenazmente que la eliminación del término de incumbencia en la Convención Constituyente fue por razón de no ser necesario, ya que el mismo estaba implícito en la estructura constitucional; que tal eliminación fue inexplicable; que "no se puede interpretar como un rechazo de la constituyente a la norma allí contenida". Huelga decir que no nos persuade su argumentación.

## B. *Experiencia federal*

En el ámbito federal la experiencia ha sido muy similar a la del Estado Libre Asociado de Puerto Rico. Al igual que la nuestra, la constitución federal no estableció término de incumbencia a los secretarios de gobierno. Al respecto la Sec. 2 del Art. II dispone:

> . . . Asimismo, con el consejo y consentimiento del Senado, nombrará embajadores, otros ministros y cónsules públicos, los jueces del Tribunal Supremo y todos los demás funcionarios de los Estados Unidos cuyos cargos se establezcan por ley y cuyos nombramientos esta Constitución no prescriba. Pero el Congreso podrá por ley, confiar el nombramiento de aquellos funcionarios subalternos que creyere prudente, al presidente únicamente, a los tribunales de justicia o a los jefes de departamento. Constitución de los Estados Unidos de América.

El Congreso, sin embargo, aprobó en el 1867 el *Tenure Office Act*, 14 Stat. 430, para disponer que los funcionarios nombrados con el consejo y consentimiento del Senado ocuparían sus cargos hasta que sus sucesores fueran de la misma manera nombrados, pero disponiéndose que, en el caso de los secretarios de Estado, del Tesoro, de Guerra, de la Marina, del Interior, el Administrador de Correos y el *Attorney General* ocuparían sus cargos por el término del Presidente que los nombró y por un mes adicional. 14 Stat. 430. Esta legislación fue derogada en el 1887, 24 Stat. 500, y al presente no existe término de incumbencia para los secretarios de gobierno.

La práctica federal ha sido la de no enviar al Senado los nombramientos de los secretarios de gabinete que el Presidente reelecto ha decidido retener por el nuevo cuatrienio. Conviene reproducir al respecto la opinión emitida el 18 de abril de 1929 por el *Attorney General* de los Estados Unidos:

> Históricamente, parece haber sido aceptado generalmente que al fallecer el Presidente o a la expiración de su término

no es necesaria la renominación o extender un nuevo nombramiento a aquellos funcionarios que el nuevo Presidente desea retener en sus cargos. Hay muchos ejemplos de funcionarios retenidos en sus cargos por diferentes Presidentes, algunos de los cuales mencionaremos más adelante como ilustración. En ausencia de alguna disposición constitucional o estatutaria en contrario, y en vista de la interpretación pragmática que se inició con la fundación del Gobierno, no veo fundamento alguno para sostener el punto de vista de que a la terminación de una administración se requiera al Presidente someter al Senado para confirmación el nombramiento de aquellos funcionarios que ocupan posiciones como jefes de departamentos ejecutivos y que él desea que continúen en sus cargos, excepto en el caso del Administrador General de Correos. (Traducción nuestra.) 26 *Op. Att. Gen.*, pág. 14.

La jurisprudencia de las jurisdicciones estatales no tiene valor persuasivo en la dilucidación de esta controversia, ya que generalmente la mayor parte de los funcionarios son electos. Además, las disposiciones constitucionales y de ley difieren sustancialmente de las disposiciones aquí en cuestión, porque los cargos tienen un término fijo de duración. El propio promovente afirma en su alegato que en esas jurisdicciones "difícilmente se podía plantear el problema del presente caso, ya que los Secretarios de Gobierno no requieren confirmación del Senado".

C. *Separación de poderes*

Las partes argumentan extensamente la aplicación de la doctrina de separación de poderes en beneficio de sus respectivas posiciones.

La doctrina de separación de poderes se refiere a la organización tripartita del Gobierno mediante la delimitación del ámbito de las funciones correspondientes a cada una de sus ramas. La distribución de poderes lleva en sí misma cierto grado de tensión que la propia doctrina atenúa mediante el sistema de pesos y contrapesos. La doctrina es, sin duda, útil en la determinación del ámbito

preciso de cada uno de los poderes y, muy especialmente, en la interpretación de disposiciones constitucionales ambiguas. Véanse en general, *Banco Popular, Liquidador* v. *Corte*, 63 D.P.R. 66 (1944); *P.P.D.* v. *Ferré, Gobernador*, 98 D.P.R. 338, 429 (Opinión Juez Rigau) (1970); *In re Rodríguez Torres*, 106 D.P.R. 698, 700 (Op. Juez Trías Monge) (1978).

En el caso de autos nos confrontamos con una determinación específica de la Convención Constituyente, que rehusó imponer término de incumbencia a los secretarios de gobierno y, en consecuencia, aprobó una disposición constitucional que omitía expresamente toda referencia a dicho término. La doctrina de separación de poderes ni ninguna otra puede revocar tal determinación.

No nos impresionan los argumentos del promovente a los efectos de que la denegación del auto frustraría en gran medida las funciones vitales del proceso de confirmación, que se violarían los más elementales principios de administración pública promoviendo con ello la corrupción y abuso de poder de los funcionarios que el Gobernador decidiera retener en sus puestos.

Nada de lo aquí dicho menoscaba la facultad y el deber de la Asamblea Legislativa de fiscalizar la ejecución de la política pública y la conducta de los jefes de departamentos mediante el ejercicio de sus vastos poderes de investigación, citación, vistas públicas, asignación de fondos y aprobación del Presupuesto General de Gastos.

No hemos creído necesario referirnos específicamente a otros argumentos del promovente, porque la discusión anterior los atiende adecuadamente.

*Se dictará sentencia en que se anule el auto expedido.*

El Juez Asociado Señor Díaz Cruz emitió opinión disidente. El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Negrón García no intervinieron.

—O—

Opinión disidente emitida por el Juez Asociado Señor Díaz Cruz.

Los secretarios de gobierno y jefes de agencias importantes no son simples ayudantes del gobernador. Ellos dirigen departamentos ejecutivos a través de los cuales se efectúa realmente la política pública del gobierno. El nombramiento de dichos secretarios y demás incumbentes sin término fijo para los que se exige confirmación es función compartida entre gobernador y Senado. Si el gobernador reelecto los retiene en sus cargos su actuación equivale a un renombramiento que necesariamente requiere la confirmación por el Senado. La cuestión se remite al principio básico de que la fuente de poder en el Estado Libre Asociado es el Pueblo, que elige sus gobernantes o administradores en comicios generales cada cuatro años. Expirado el término del gobernador inevitablemente expira el de los secretarios de gobierno y altos funcionarios por él nombrados con el consejo y consentimiento del Senado. De lo contrario se estaría negando al nuevo Senado resultante del libre ejercicio del sufragio la facultad constitucional de confirmación, su legítima participación en el proceso nominativo, y en final consecuencia se estaría subvirtiendo el mandato popular de que sea el Senado nuevamente constituido por voto y determinación de los electores el que pase juicio y decida si confirma o no a los secretarios y jefes de gobierno redesignados. En el ejercicio de la facultad de consejo y consentimiento o de cualquier otra función del cuerpo, un Senado no obliga al nuevo Senado que le sucede como resultado de las elecciones generales, sin que se afecte la norma por el hecho de responder o no sus integrantes al mismo partido político que eligió al gobernador.

El principio general es que en ausencia de fijación del término de un cargo, bien por la Constitución o por

legislación, el incumbente cesa con la expiración del término del funcionario nominador. Si por exigencia constitucional el Gobernador de Puerto Rico, aunque se suceda a sí mismo, viene obligado a jurar nuevamente su cargo cada cuatro años, la conclusión analógica es que los secretarios de gobierno y altos funcionarios que requieren confirmación deban también, cada cuatro años, revalidar su designación expresa o implícita, ante el Senado. El Gobernador de Puerto Rico ejerce ya una desmedida concentración de poder que no debe aumentarse por la abdicación del poder de consejo y consentimiento del Senado. "El reclamo de poder inherente del ejecutivo debe al presente mirarse con la grave sospecha que provoca en una era que ha presenciado un excesivo engrandecimiento presidencial." (Léase ejecutivo.) Tribe, *American Constitutional Law*, 1978, pág. 184.

Expediría el auto de *mandamus* que solicita el Senado.