ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| JULIA FELIZ BARRERA<br>PARTE RECURRENTE<br><br>v.<br><br>OFICINA DE GERENCIAS DE PERMISO<br>PARTE RECURRIDA | TA2026RA00034 | *Revisión Administrativa* procedente de la Oficina de Gerencias de Permisos<br><br>Caso núm.: 2024-579429-DIA-300042 |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de enero de 2026.

Comparece ante nos la Sra. Julia Feliz Barrera (en adelante, Sra. Barrera o recurrente), por derecho propio e *in forma pauperis*, mediante un *Recurso de Revisión* radicado el 7 de enero de 2026. En su escrito nos solicita, entre otras cosas, que se declare deficiente la notificación publica que realizó la Oficina de Gerencia de Permisos (en adelante OGPe), se ordene la paralización sobre la determinación impugnada y se devuelva el asunto a la agencia para que se emita una notificación publica clara, integra y conforme a derecho.

El mismo día de la presentación del recurso, la parte recurrente radicó una *Solicitud para Declaración de Indigencia* para que se le exima del pago del arancel. Luego de evaluada la referida solicitud, la misma se declara Ha Lugar, y en su consecuencia, se le exime del pago del arancel de primera comparecencia.

**I.**

Como parte de una solicitud de permisos, el Proponente Cabo Rojo Land Acquisition, LLC, presentó una Declaración de Impacto Ambiental al cual se le asignó en alfanumérico 2024-579429-DIA-300042, como

documento técnico, ante la OGPe. El 4 de febrero de 2025 fue publicado el *Aviso Público sobre Presentación de Declaración de Impacto Ambiental y Notificación de Celebración de Vista Pública* en el Periódico El Vocero. [1] Luego de los trámites rigor, el 23 de diciembre de 2025 fue aprobada por la Junta Adjudicativa de la Oficina de Gerencia de Permisos la Descripción de Cumplimiento Ambiental.[2]

El 7 de enero de 2026, la recurrente presentó el recurso ante nuestra consideración en el que, aunque no señala un error específico, argumenta que la notificación de la OGPe de la determinación de Cumplimiento Ambiental es deficiente; que no tiene acceso al expediente completo a través de los enlaces informados y que existe información contradictoria en el contenido de la determinación de Cumplimiento Ambiental.

Por los fundamentos que exponemos a continuación, se desestima el recurso instado por la parte recurrente.

## II.

### A. Jurisdicción

La jurisdicción es conocida como el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *JJJ Adventure v. Consejo de Titulares*, 2025 TSPR 123, 216 DPR __ (2025); *R&B Power, Inc. v. Junta de Subastas ASG*, 213 DPR 685, 698 (2024); *Pueblo v. Torres Medina*, 211 DPR 950, 958 (2023); *Cobra Acquisitions v. Mun. de Yabucoa et al.*, 210 DPR 384, 394 (2022). Es principio reiterado que los tribunales estamos llamados a ser fieles guardianes de nuestra jurisdicción, incluso cuando ninguna de las partes invoque tal defecto. *R&B Power, Inc. v. Junta de Subastas ASG, supra,* pág. 698; *Ruiz Camilo v. Trafon Group, Inc.,* 200 DPR 254, 268 (2018). Por tanto, es deber del foro primario y apelativo analizar, en todo caso, si poseen jurisdicción para atender las controversias presentadas ante su

---

[1] Anejo A del Recurso de Revisión.
[2] El tribunal tomó conocimiento judicial de la Determinación de Cumplimiento Ambiental del caso 2024-579429-DIA-300042 mediante el Portal Oficial del Gobierno de Puerto Rico.

consideración. *Mun. San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014). Así pues, si un tribunal carece de jurisdicción, lo procedente es la desestimación del caso sin entrar en los méritos de la controversia. *R&B Power, Inc. v. Junta de Subastas ASG, supra,* pág. 698; *Mun. San Sebastián v. QMC Telecom, supra.*

**B. Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA sec. 9601 *et seq.,* establece el marco normativo que rige la revisión judicial de las decisiones emitidas por las agencias administrativas. *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473, 484 (2024). Dicho marco se sustenta en el principio de razonabilidad, lo que implica evaluar que no se haya actuado de manera arbitraria o ilegal, o de forma tan irrazonable que constituya un abuso de discreción. *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).

A tenor, existen tres aspectos que delimitan el alcance de la revisión judicial de las decisiones administrativas: "(1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho del ente administrativo fueron correctas". *Rolón Martínez v. Spte. Policía,* 201 DPR 26, 36 (2018), citando a *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012).

En ese sentido, la Sección 4.2 de la LPAU, dispone que:

> Una parte adversamente afectada por una **orden o resolución final** de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente **podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones,** dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido

interrumpido mediante la presentación oportuna de una moción de reconsideración.

[...]

Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia. 3 LPRA sec. 9672. (Énfasis nuestro).

Según definido por la ley, una orden o resolución es "**cualquier decisión o acción agencial** de aplicación particular **que adjudique derechos u obligaciones** de una o más personas específicas, **o que imponga penalidades o sanciones administrativas** excluyendo órdenes ejecutivas emitidas por el Gobernador." 3 LPRA sec. 9603. (Énfasis nuestro). La ley distingue entre órdenes o resoluciones parciales, que son aquellas que adjudican derechos u obligaciones, pero no ponen fin a la controversia total, sino a un aspecto específico de la misma, y las órdenes interlocutorias, que son acciones de la agencia que disponen de asuntos meramente procesales. *Id.*

Asimismo, la Sección 3.14 de la LPAU dispone lo siguiente:

Una orden o resolución final deberá ser emitida por escrito dentro de noventa (90) días después de concluida la vista o después de la presentación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada.

La orden o resolución deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso. La orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley.

La orden o resolución advertirá el derecho de solicitar la reconsideración ante la agencia o de instar el recurso de revisión como cuestión de derecho en el Tribunal de Apelaciones, así como las partes que deberán ser notificadas del recurso de revisión, con expresión de los términos correspondientes. Cumplido este requisito comenzarán a correr dichos términos. 3 LPRA sec. 9654.

De conformidad con lo antes expuesto, se ha interpretado que una "orden o resolución final" es aquella que "dispone del caso ante la agencia y tiene efectos adjudicativos y dispositivos sobre las partes". *Pérez López v. Depto. Corrección*, 208 DPR 656, 672-673 (2022), citando a *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 545 (2006).

Además y en lo pertinente, la LPAU expresamente dispone que, entre otros, todos los trámites o etapas del proceso de evaluación de documentos ambientales requeridos por el Artículo 4(B)(3) de la Ley 416-2004, según enmendada, "Ley sobre Política Pública Ambiental" y el reglamento aprobado al amparo de ésta se considerarán procedimientos informales no cuasijudiciales y, por tanto, no estarán sujetos a sus disposiciones. 3 L.P.R.A. sec. 9641.

### C. Ley para la Reforma del Proceso de Permisos de Puerto Rico

Ley Núm. 161 de 1 de diciembre de 2009, según enmendada, conocida como la "Ley para la Reforma del Proceso de Permisos de Puerto Rico", se aprobó con el fin de establecer el marco legal y administrativo que regiría en la solicitud, evaluación, concesión y denegación de permisos de construcción que inciden en el desarrollo económico del Estado Libre Asociado de Puerto Rico.

En lo pertinente, la referida Ley 161-2009, define la Determinación de Cumplimiento Ambiental como "toda determinación que realiza el Director Ejecutivo de la Oficina de Gerencia de Permisos o la Junta Adjudicativa, como parte de una determinación final, en donde certifica que la agencia proponente ha cumplido con los requisitos sustantivos y procesales del Artículo 4(B)(3) de la Ley 416-2004, según enmendada, conocida como la "Ley sobre Política Pública Ambiental", y con los reglamentos aplicables". Artículo 1.5 (22) (23 L.P.R.A. sec. 9011). Asimismo, el *Reglamento Conjunto para la evaluación y expedición de permisos relacionados al desarrollo, uso de terrenos*

*y operación de negocios* de la Junta de Planificación, número 9473 del 16 de junio de 2023 define la determinación de Cumplimiento Ambiental como " toda determinación que realiza el Director de la Oficina de Gerencia de Permisos o la Junta Adjudicativa, **como parte de una decisión final**, en donde certifica que la Agencia Proponente ha cumplido con los requisitos sustantivos y procesales del Artículo 4(b)(3) de la Ley 416 de 22 de septiembre de 2004, según enmendada, y con los reglamentos aplicables. (Énfasis nuestro). [3]

El Artículo 8.5. de la Ley 161-2019, según enmendada, dispone sobre el proceso de evaluación de Cumplimiento Ambiental:

> El proceso de planificación ambiental es un procedimiento informal sui generis excluido de la aplicabilidad de la Ley de Procedimiento Administrativo Uniforme. El Secretario Auxiliar de la Oficina de Gerencia de Permisos, realizará la determinación de cumplimiento ambiental requerida bajo las disposiciones del Artículo 4(B)(3) de la Ley 416-2004, supra, y el reglamento que a los fines de este Artículo y de esta Ley, apruebe la Junta de Calidad Ambiental en cuanto a: las acciones que tome con relación al trámite de los documentos ambientales, a las exclusiones categóricas, a las acciones con relación a la determinación de cumplimiento ambiental, y a las determinaciones finales que se le soliciten, de conformidad con esta Ley; y cualquier acción sujeta al cumplimiento con las disposiciones del Artículo 4(B)(3) de la Ley 416-2004, supra.
> …

---

[3] El Artículo 4(b)(3) de la Ley 416 de 22 de septiembre de 2004, según enmendada, dispone: Todos los departamentos, agencias, municipios, corporaciones e instrumentalidades públicas del Gobierno de Puerto Rico y sus subdivisiones políticas deberán, al máximo grado posible, interpretar, aplicar y administrar todas las leyes y cuerpos reglamentarios vigentes y los que en el futuro se aprueben en estricta conformidad con la política pública enunciada en el Artículo 3 de esta Ley. Asimismo, se ordena a los departamentos, agencias, municipios, corporaciones e instrumentalidades públicas del Gobierno de Puerto Rico y sus subdivisiones políticas que, en la implantación de la política pública de esta Ley, cumplan con las siguientes normas:
1. [...]
2. [...]
3. Incluir en toda recomendación o informe sobre una propuesta de legislación y emitir, antes de efectuar cualquier acción o promulgar cualquier decisión gubernamental que afecte significativamente la calidad del medioambiente, una declaración escrita y detallada sobre: a) El impacto ambiental de la legislación propuesta, de la acción a efectuarse o de la decisión a promulgarse; b) cualesquiera efectos adversos al medioambiente que no podrán evitarse si se aprobase y aplicase la propuesta legislación, si se efectuase la acción o promulgase la decisión gubernamental de que se trate. c) alternativas a la legislación propuesta, o a la acción o decisión gubernamental en cuestión; d) la relación entre usos locales a corto plazo del medioambiente y la conservación y mejoramiento de la productividad a largo plazo; y, e) cualquier compromiso irrevocable o irreparable de los recursos naturales que estarían envueltos en la legislación propuesta, si la misma se implementase; en la acción gubernamental, si se efectuase; o en la decisión, si se promulgase.

> Las Declaraciones de Impacto Ambiental y aquellas evaluaciones ambientales que requieran un proceso de evaluación "NEPA-Like Process", serán comentadas por el público en general durante el proceso de planificación ambiental, mediante vista pública, según aplique, y seguirá el procedimiento que establezca la Junta de Calidad Ambiental, mediante el Reglamento Conjunto. **Además, la determinación de cumplimiento ambiental será revisada, en conjunto con la determinación final, según se establezca por reglamentación que la Oficina de Gerencia de Permisos adopte a tales efectos.**

A su vez, la Regla 2.6.1 (b) del Reglamento Conjunto dispone, en lo pertinente, que la evaluación de un documento ambiental culminará en una serie de recomendaciones que formaran parte de las determinaciones finales de la OGPe, los Municipios Autónomos con Jerarquía de la I a la III y el PA. La Sección 2.6.2.3 (b) del Reglamento Conjunto establece que la determinación ambiental no es una decisión revisable de carácter final, ni independiente o separada, sino que es un componente de la determinación final. Dicha determinación **solo será revisable en conjunto con la determinación final de la OGPe.** (Énfasis nuestro).

### D. Legitimación Activa

El Tribunal Supremo de Puerto Rico reiteradamente ha reconocido que el principio de justiciabilidad requiere la existencia de un caso o controversia real para que los tribunales puedan ejercer válidamente el Poder Judicial. *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 738 (2022). En ese sentido, se ha establecido que una controversia no es justiciable cuando: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro. *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68-69 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 932 (2011); *Noriega v. Hernández Colón*, 135 DPR 406, 421-422 (1994).

La legitimación activa se ha definido como la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante

ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante. *Bhatia Gautier, supra,* pág. 69, citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho procesal civil*, San Juan, Pubs. LexisNexis de Puerto Rico, Inc., 2017, pág. 121; J.A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1ra ed. rev., Colombia, [s. Ed.], 2012, pág. 132. El propósito de esta doctrina es demostrarle al foro adjudicador que el interés del demandante en el pleito es de tal índole que, con toda probabilidad, proseguirá su causa de acción de manera vigorosa. *Sánchez et al. v. Srio. de Justicia et al.*, 157 DPR 360, 371 (2002); *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 413 (1982).

Para determinar si una parte posee legitimación activa, debe cumplir con los siguientes requisitos: 1) haber sufrido un daño claro y palpable; 2) que el referido daño sea real, inmediato y preciso, y no abstracto o hipotético; 3) que exista una conexión entre el daño sufrido y la causa de acción ejercitada; y 4) que la causa de acción surja bajo el palio de la Constitución o de una ley. *Lozada Tirado, et al. v. Testigos Jehová*, 177 DPR 893, 924 (2010); *Col. Peritos Elec. v. AEE*, 150 DPR 327, 331 (2000); *Asoc. Maestros PR v. Srio. Educación*, 137 DPR 528, 535 (1994).

**III.**

Conforme a los hechos antes expuestos, así como el derecho aplicable, nos corresponde desestimar el recurso presentado por falta de jurisdicción. Según las alegaciones de la parte recurrente en su recurso, se desprende que dicha parte cuestiona el procedimiento llevado a cabo por la Oficina de Gerencia de Permisos y que culminó con la Determinación de Cumplimiento Ambiental en el caso 2024-579429-DIA-300042. En los documentos anejados por la recurrente en su recurso, no se anejó la determinación final de la agencia. Del propio documento de Determinación de Cumplimiento Ambiental con fecha del 23 de diciembre de 2025, se les advierte a las partes que lo determinado no constituye una decisión final, sino que forma parte integral

de la determinación final que en su momento emitirá la Oficina de Gerencia de Permisos. Asimismo, le advierte que la determinación sobre el cumplimiento ambiental solo será revisable en conjunto con la determinación final. Como dispone la Ley 161-2009, según enmendado y el Reglamento Conjunto 9473, lo cuestionado por la parte recurrente no constituye la determinación final de la agencia y, por ende, no es revisable en esta etapa. Es decir, el trámite ante la OGPe no ha concluido, pues las determinaciones de cumplimiento ambiental son parte del proceso ante la agencia.

Por otro lado, la parte recurrente no consta en la determinación de cumplimiento ambiental como persona que haya presentado alguna ponencia verbal o escrita, a favor o en contra de la acción propuesta; ni ha alegado cómo la determinación de cumplimiento ambiental emitida por la agencia le afecta. Según surge del recurso, la parte recurrente reside en el Municipio de Arecibo y la determinación de cumplimiento ambiental que pretende impugnar está ubicado en el Municipio de Cabo Rojo. Por ende, la parte recurrente no ha demostrado tener legitimación activa para impugnar el proceso ante la OPGe.

**IV.**

Por los fundamentos que anteceden, se *desestima* el *Recurso de Revisión por falta de jurisdicción.*

Notifíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones